IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VIVIAN SETON, ET AL.        :

    v.                      : Civil Action No. DKC 2006-1246

FORREST SYGMAN, PA, ET AL.  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion of Defendants Forrest Sygman and Forrest Sygman, P.A. to dismiss for lack of personal jurisdiction or, in the alternative, to dismiss for failure to state a claim upon which relief can be granted. (Paper 8). The issues have been briefed fully and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the court will grant Defendants' motion to dismiss for lack of personal jurisdiction.[1]

**I. Background**

On December 1, 2006, Plaintiff Vivian Seton, an individual residing in Maryland, filed an Amended Complaint against Defendants United Gold Network, LLC ("UGN"), Forrest Sygman, P.A., Sunset 2 Investments, Wealth Creators, Inc., William Council, Roselyn R.

---

[1] Because the court will grant Defendants' motion to dismiss for lack of personal jurisdiction, the court will not address Defendants' 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

Vilovar, Forrest Sygman, and Lemoyne D. Veney.[2]  The complaint alleged breach of contract, intentional misrepresentation, negligent misrepresentation, and intentional infliction of emotional distress.  Since that time, several Defendants have been dismissed from the case.[3]  Defendants Council and Veney were served, and, having not responded, default was entered against them on May 8, 2007. (Paper 21).  The claims against defendants Forrest Sygman, P.A., a Florida professional association, and Forrest Sygman, an individual residing in Florida, remain.  Plaintiff alleges that the court may assert jurisdiction over Sygman and Sygman, P.A. because of Sygman's acts directed toward Maryland.  In the alternative, Plaintiff alleges that the court may exercise jurisdiction over Sygman and Sygman, P.A. under the conspiracy theory of personal jurisdiction.

Plaintiff alleges that during April 2003, Defendants William Council and Lemoyne Veney approached her several times at her home

---

[2] Plaintiff, who was then represented by counsel, filed her original complaint on May 17, 2006, on behalf of herself and three Maryland businesses which she owned and managed: Seton & Seton Co., Inc., Seton Manor Care, and Millennium Realty and Management. After her counsel withdrew and she was informed that she could not proceed *pro se* for the corporate entities, Seton dropped the corporate entities from the case and has proceeded *pro se*.

[3] Claims against Wealth Creators, Inc., UGN, Sunset 2 Investments, and Vilovar were all dismissed because Plaintiff failed to show good cause as to why service of the summons and complaint was not made. (Papers 21 and 23).  Though present in the first complaint, Plaintiff appears to have dropped Emerging International Assets from her amended complaint.

in Silver Spring, Maryland.  Council and Veney encouraged Plaintiff to invest money in their plan to purchase, process, and re-sell precious gems from Africa through a Florida corporation, United Gold Network, LLC, with which they were involved.[4]  At first, Council and Veney tried to persuade Plaintiff to invest $150,000, but this number gradually decreased to $50,000 as Plaintiff informed Defendants that this was the most she could afford based on her business concerns.[5]  During these conversations, Council and Veney allegedly held out UGN as a valid corporation with assets, capital, and connections sufficient to secure a bank guarantee or line of credit and make the business venture profitable.  Council and Veney had Seton speak with Roselyn Vilovar, who told Plaintiff that she had connections that would help the investment proceed smoothly.  Veney and Vilovar also allegedly told Seton that their attorney and the attorney for the corporate venture, Defendant Sygman, would invest $30,000 in the plan.  Based on this information and several written proposals from Veney and Council, Plaintiff agreed to invest $50,000.

---

[4] While the facts as laid out by the parties are somewhat unclear, it appears that the company Emerging International Assets was also involved in the plan.

[5] Seton was involved in and responsible for a number of business interests including Seton & Seton Company, Inc., Seton Manor Care (a group home), and Millennium Realty & Management (a property management and development company).  (Paper 7, at 5).

On May 17, 2003, Seton entered into two written agreements with Veney as the authorized representative of UGN. The first, entitled "Agreement," stated that Seton would provide UGN with $50,000 to secure a bank guarantee to be used as collateral for the project. In return, Veney would commit to: 1) issue membership subscriptions to Seton equal to a 20% equity share in UGN and a 20% share of Emerging International Assets, Inc.; 2) pay Seton a dividend equal to 20% of her $50,000 investment every sixty days; 3) provide all necessary funding for the purchase of two properties by Seton, one in Washington, D.C. and one in Silver Spring, Maryland; and 4) transfer $750,000 to Seton when a line of credit was established. The second written agreement, entitled "Subscription Agreement," defined the terms and conditions of Seton's membership subscription in UGN. As per these agreements, Seton transferred a total of $50,000 to a trust account in Sygman's name, through two transactions on May 20 and May 28, 2003.

Soon after the money was transferred, Seton began contacting Veney and Vilovar about the progress of the venture. On June 5, 2003, Veney wrote a letter on Madison Capital Holdings, Inc. ("MCH") letterhead confirming his agreement to fund the purchase of one of the properties for Seton, and stating that the funds would become available on June 13, 2003. (Paper 7, Ex. D, Veney Letter). Vilovar also sent Seton an email on or about June 30, 2003, stating that the transaction was going well, and promising to keep

Plaintiff informed. (*Id.*, Ex. E, Vilovar Email). This was the last Plaintiff heard from Vilovar. Around this time, Plaintiff also alleges that Veney told her that Sygman would not be investing $30,000 in the venture, as Veney had previously claimed. In addition, Plaintiff alleges that, as she continued to ask about her investment, Veney and Vilovar became verbally abusive toward her, culminating with threats from Veney in late July 2003 that he would "take care" of Plaintiff if she continued to contact him. (Paper 7, at 8).

Plaintiff alleges that, since her payments, all Defendants have refused to perform any of their obligations under the Agreement and have therefore breached the Agreement. Plaintiff also alleges that defendants "UGN, Council, Veney and/or Violvar" intentionally and/or negligently misrepresented material facts to her, specifically that UGN was an existing corporation with assets, capital and connections, and that Sygman would also invest in the venture. (Paper 7, at 12). In fact, Plaintiff alleges that UGN was not in existence as a corporation when Council and Veney first approached her, and that its bouncing a $25 check for a filing fee with the Florida Division of Corporations suggests it never had any assets, capital, or connections. Similarly, Plaintiff alleges that MCH was never incorporated, as Veney represented, and was never a valid, operating business in any state or the District of Columbia. Plaintiff alleges that Defendants' actions constitute intentional

5

infliction of emotional distress, particularly because Defendants knew about Seton's business concerns but took her money anyway.

In response, Defendant Sygman claims that he is not aware of any interactions between William Council or Lemoyne Veney and Vivian Seton, and that he has never met nor spoken to Plaintiff. (Paper 8, at 1-2). Defendant also states that he has not visited the state of Maryland within the last ten years, and that he has not engaged in substantial activity within the state. (*Id.* at 3). Thus, Defendant Sygman argues that the court does not have jurisdiction over him, and that Plaintiff has not sufficiently alleged "that Sygman was a participant on any ongoing basis" with the other Defendants, whom he admits may have committed jurisdictionally sufficient acts within Maryland. (*Id.*)

## II.  Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)). If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt

6

at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989). If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst of Maryland*, 334 F.3d at 396. *See also Mylan Labs.*, 2 F.3d at 60; *Combs*, 886 F.2d at 676. In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan,* 2 F.3d at 60; *Carefirst of Maryland*, 334 F.3d at 396.

The crucial issue is whether the defendant's contacts with the forum state, here Maryland, are substantial enough that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A defendant has fair warning that it might be subject to a forum's jurisdiction if it purposefully directs its activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)). Where a nonresident defendant purposefully has engaged in significant activities within the forum

state or has created "continuing obligations" with residents of the forum state, the defendant has obtained the benefits and privileges of conducting business there, and thus, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp.*, 471 U.S. at 476.

**III. Analysis**

Under Maryland law, a federal district court may exercise personal jurisdiction over a nonresident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). The Court of Appeals of Maryland has "consistently held that the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15 (2005). Yet, courts may not "simply dispense with analysis under the long arm statute," but rather, must interpret it "to the limits permitted by the Due Process Clause when [they] can do so consistently with the canons of statutory construction." *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n.6 (2006), *answer to certified question conformed to*, 438 F.Supp.2d 592 (D.Md. 2006), *cert. denied*, 127 S. Ct. 34 (2006).

Maryland's long arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, provides in part:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:

8

>     (1)   Transacts any business or performs any
>           character of work or service in the State;
>
>     (2)   Contracts to supply goods, food, services, or
>           manufactured products in the State;
>
>     (3)   Causes tortious injury in the State by an act
>           or omission in the State;
>
>     (4)   Causes tortious injury in the State or outside
>           of the State by an act or omission outside the
>           State if he regularly does or solicits
>           business, engages in any other persistent
>           course of conduct in the State or derives
>           substantial revenue from goods, food,
>           services, or manufactured products used or
>           consumed in the State; . . .

There is a limiting condition in § 6-103 (a): "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section."

With regard to personal jurisdiction over Defendants Sygman and Sygman, P.A., Plaintiff's opposition does not identify any particular prong of Maryland's long arm statute upon which she relies. Such a deficiency, by itself, may be reason to dismiss. Judge Blake suggested in *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 704 n.1 (D.Md. 2004), that dismissal might be appropriate if a plaintiff fails to identify a specific Maryland statutory provision authorizing jurisdiction either in the complaint or in an opposition to a motion to dismiss. Notwithstanding this deficiency, the contacts that Plaintiff attributes to Defendant are best analyzed under subsection (b)(1).

Subsection (b)(1) allows a court to exercise personal jurisdiction over a defendant who "transacts any business or

9

performs any character of work or service in the State." Md. Code Ann., Cts. & Jud. Proc. §6-103(b)(1). "[A] nonresident who has never entered the state, either personally or through an agent, may be deemed to have 'transacted business' in the state within the meaning of subsection (b)(1)." *Snyder v. Hampton Indus., Inc.*, 521 F.Supp. 130, 141 (D.Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985). *See also Prince v. Illien Adoptions Int'l, Ltd.*, 806 F.Supp. 1225, 1228 (D.Md. 1992).

With respect to due process, the exercise of personal jurisdiction over a nonresident "depends on whether the defendant's contacts with the forum state provide the basis for the suit." *See Mitrano v. Hawes*, 377 F.3d 402, 406-07 (4th Cir. 2004) (citing *Carefirst of Md.*, 334 F.3d at 397). Where, as here, personal jurisdiction is premised on specific jurisdiction, the court must examine "(1) the extent to which the defendant purposefully availed [himself] of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted), *cert. denied*, 537 U.S. 1105 (2003). Purposeful availment is satisfied where a nonresident defendant has purposefully engaged in significant activities within

10

the forum state or has created "continuing obligations" with residents of that state. *Burger King Corp.*, 471 U.S. at 476.

Defendants Sygman and Sygman, P.A. contend that they have had essentially no contact with Maryland. While Plaintiff does not directly address personal jurisdiction over Defendants Sygman and Sygman, P.A. because of their actions (rather than those of the other Defendants, discussed below), she does allege that she transferred funds to a trust account in Sygman's name "at Sygman's direction." (Paper 12, at 3).[6] This allegation is simply insufficient to satisfy either the Maryland long arm statute, or the requirements of due process.

Maryland courts have interpreted the long arm statute's "transacted business" language broadly, concluding that it is not limited to acts of commerce or transactions for profit, but includes acts which constitute a purposeful activity within the state. *Malinow v. Eberly*, 322 F.Supp. 594 (D.Md. 1971). Despite this latitude, however, the level of contact Defendants Sygman and Sygman, P.A. had with Maryland is insufficient to bring them within the purview of subsection (b)(1).

At most, Plaintiff has alleged very limited and indirect correspondence between herself and Defendants Sygman and Sygman, P.A. Plaintiff has not alleged that she ever spoke directly to Defendant Sygman; she states merely that she transferred money into

---

[6]

11

the trust account in his name "at Sygman's direction." (Paper 12, at 3). Even if more direct communication were alleged, Defendant's contact with Maryland would fail to reach the level of "transacting business" in the state, as out-of-state telephone calls and letters, without more, have not been found to constitute business transactions for the purposes of subsection (b)(1). *Craig v. Gen. Fin. Corp.*, 504 F.Supp. 1033 (D.Md. 1980).

Furthermore, Plaintiff's allegations fail to meet the requirements of due process analysis. "[G]enerally speaking, correspondence and phone calls from out-of-state defendants to in-state plaintiffs are insufficient as a matter of law to establish the minimum contacts that satisfy due process." *Cape v. von Maur*, 932 F.Supp. 124 (D.Md. 1996) (citing *Leather Masters (PVT) Ltd. v. Giampier Ltd.*, 836 F.Supp. 328, 331 (D.Md. 1993)). In *Cape*, the communications at issue were both more direct and more numerous than those between Plaintiff and Defendants Sygman and Sygman, P.A. In *Cape*, the direct, documented correspondence was between the defendants (out-of state counsel) and the plaintiff (a Maryland resident). No such record is present here. Similarly, in *Cape*, the plaintiff was the defendants' client, making the relationship to the plaintiff, and thus to Maryland, far less attenuated than it is here. Yet, the *Cape* communications were still insufficient to gain personal jurisdiction in Maryland over the out-of-state Defendants.

Here, Plaintiff's vague allegations suggest that Defendant Sygman had indirect correspondence on very limited occasions with Plaintiff, who was not, herself, his client or a client of his business, Sygman, P.A.  Defendant Sygman did not seek business in Maryland; he did not travel here, operate a business here, or even have agents here.  In addition, Plaintiff has not alleged that Defendant knew she was a Maryland resident, or that they had any direct contact.  Thus, the allegation that Defendant Sygman purposefully directed his activities into Maryland is quite weak.  Even if more fully alleged and supported, it would fail to meet Plaintiff's burden for establishing minimum contacts.  In addition, because there is no evidence that Defendant knew of the alleged scheme directed at Plaintiff, in Maryland, by his client, UGN, it would be unreasonable to require him to defend himself in court in Maryland.  "The foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen*, 444 U.S. at 295.  Even if Plaintiff's allegations are true, Defendant did no more than set up a trust account in his name, in Florida, and direct Plaintiff to transfer funds there for the benefit of his clients, none of whom are Maryland residents.  He did not purposefully direct his activities into Maryland in any meaningful way, and he

13

could not have reasonably anticipated being brought into court here.

Plaintiff also alleges that the other Defendants falsely told her that Sygman would invest $30,000 in the venture. Ultimately, this is irrelevant for personal jurisdiction over Sygman and Sygman, P.A. because there is no allegation that Sygman or any agent of Sygman, P.A. made this representation directly to Plaintiff, or even that he knew that the other Defendants made such a claim.

Plaintiff's interactions with Defendant Sygman's clients, including the assertion that they misrepresented Sygman's intentions to contribute to the business venture, fail to satisfy the requirement of purposeful availment with regard to Defendants Sygman and Sygman, P.A. In *Hanson v. Deckla*, 357 U.S. 235, 253 (1958), the Supreme Court stated:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Thus, the mere allegation that Sygman's clients acted in Maryland, without more, is insufficient to confer personal jurisdiction over Defendants Sygman and Sygman P.A. In addition, the fact that Sygman's clients made false claims about him is

14

immaterial absent any allegation that he either knew about or encouraged these claims, or that he otherwise directed activities into Maryland. Without more, the requirements of Maryland's long arm statute and of due process bar this court from exercising personal jurisdiction over Defendants Sygman and Sygman, P.A.

Perhaps recognizing these deficiencies, Plaintiff's opposition also focuses on the conspiracy theory of personal jurisdiction. Plaintiff argues that she has sufficiently alleged a conspiracy between Sygman and the other Defendants to gain personal jurisdiction over Sygman and Sygman, P.A. because of the other Defendants' jurisdictionally sufficient acts within Maryland.

As a foundational matter, "[a] civil conspiracy is a combination of two or more persons by an *agreement or understanding* to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Green v. Wash. Suburban Sanitary Comm'n*, 259 Md. 206, 221 (1970) (emphasis added) (citing *Bachrach v. Wash. United Coop.*, 181 Md. 315 (1943)). Simply stated, the conspiracy theory of personal jurisdiction allows a court to exercise jurisdiction over an out-of-state defendant whose co-conspirators have committed jurisdictionally sufficient acts within the forum state. *Mackey*, 391 Md. at 126-27.

The conspiracy theory of jurisdiction has been recognized by Maryland as a matter of state law. *Mackey*, 391 Md. at 121. In accepting the theory, the *Mackey* court focused on the principles articulated in *Cawley v. Bloch*, 544 F.Supp. 133, 135 (D.Md. 1982): "(1) that [in Maryland civil law] the acts of one co-conspirator are attributable to all co-conspirators, and (2) that the constitutional requirement of minimum contacts between non-resident defendants and the forum can be met if there is a substantial connection between the forum and a conspiracy entered into by such defendants." *Mackey*, 391 Md. at 486. While the theory thus requires that the conspiracy have sufficient ties to the forum state, it also, as a foundational matter, requires that the plaintiff allege a conspiracy. The *Cawley* court described the theory as when

> (1) two or more individuals conspire to do something
> (2) that they could reasonably expect to lead to consequences in a particular forum, if
> (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and
> (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum.

*Cawley*, 544 F.Supp. at 135. The *Mackey* court, after quoting this language, went on to explain how the constitutional due process requirements - particularly, that of fair warning - are met by the

16

conspiracy theory, as it requires the defendant to both enter into a conspiracy and have reason to believe that the conspiracy could result in his being subject to personal jurisdiction in the forum state.

While Defendant Sygman's motion to dismiss admits that the other Defendants may have committed jurisdictionally sufficient acts within Maryland, Sygman argues that there is nothing in Plaintiff's Complaint that alleges he was a "participant on any ongoing basis" with those other Defendants. (Paper 8, at 3). In fact, Sygman's affidavit swears that he has never met, spoken to, or done business with Defendants Veney and Council. (*Id.* at 7-8). Despite these statements, Plaintiff's opposition alleges a conspiracy between the Defendants to "acquire, convert, and unlawfully and permanently retain" her money. (Paper 12, at 2.) While Plaintiff has provided the court with funds transfer receipts indicating that she had the money transferred to Sygman's account, she has not provided any evidence that Sygman was involved in the plan to wrongly convert that money, or that he even knew of such a scheme.[7] Plaintiff's allegations are merely that the other Defendants untruthfully claimed that Mr. Sygman would contribute to the business, and that they and/or he requested the money be

---

[7] While most of Plaintiff's allegations with regard to the conspiracy are stated in an unsworn Memorandum of Law in Support of Plaintiff's Opposition to the Motion to Dismiss, the court construes these claims liberally in the case of a *pro se* plaintiff.

17

transferred into a trust in Mr. Sygman's name.[8]  She has done nothing to allege that Sygman ever said he would invest in UGN; that he had any knowledge of the scheme that Defendants, through his client, UGN, were planning; or that the money remained with him for any period of time.  Taking the facts in the light most favorable to Plaintiff, Seton has failed to establish a *prima facie* case that the agreement necessary for a conspiracy ever took place between Sygman and the other Defendants; thus, the conspiracy theory of personal jurisdiction is of no use to her.

**IV. Conclusion**

For the foregoing reasons, Plaintiff has not made the necessary showing for the court to assert personal jurisdiction over Defendants and Defendants' motion to dismiss will be granted.

                              /s/
                              DEBORAH K. CHASANOW
                              United States District Judge

---

[8] It is unclear whether Defendant Sygman spoke directly to Plaintiff at any point, and whether he or one of the other Defendants told her to deposit the money.  Plaintiff alleges that she transferred the funds "at Sygman's direction" (Paper 12, at 3), but does not state whether this instruction was given to her directly by Sygman or by one of the other Defendants.