**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| VIVIAN SETON, et al., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION NO.: DKC-06-1246 |
| | * | |
| UNITED GOLD NETWORK, LLC, et al., | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \*

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for a hearing regarding a determination of damages after the Court's entry of default judgment pursuant to Fed R. Civ. P. 55(b)(2). On March 12 and April 3, 2008, the hearing was held, and Plaintiff appeared without witnesses to testify under oath. Although not required under Rule 55, the undersigned instructed Plaintiff to provide Council and Veney, the only remaining Defendants in this action, with notice of the hearing by certified mail. Plaintiff testified that she complied with this Order and provided an affidavit of service in support. The undersigned now submits this Report and Recommendation.

### I.  Executive Summary

Assuming the truth of the facts alleged in the Amended Complaint and the ability of Plaintiff to satisfy the requirements of the Servicemember's Civil Relief Act, the undersigned recommends that Plaintiff has sufficiently demonstrated Defendant Veney's liability for breach of contract, fraud, and negligent misrepresentation. With regard to Defendant Council, the undersigned recommends that he be held liable for negligent misrepresentation. As such, it is recommended that Plaintiff receive a judgment of compensatory damages in the amount of

1

$25,000, which represents the portion of her investment in United Gold Network, LLC that Plaintiff paid out of her personal retirement account.  If the Court agrees, Defendants Council and Veney should be jointly and severally liable for this amount.

Additionally, the record supports a finding of actual malice on the part of Defendant Veney with regard to Plaintiff's fraud claims.  Therefore, the undersigned believes that an award of punitive damages in the amount of $25,000 is appropriate.

The undersigned is not persuaded that Plaintiff has established compensable losses of real estate, automobiles, and other personal property, as she has not shown that such injuries were a foreseeable result of Defendants' conduct.

Finally, Plaintiff is entitled to recover court costs associated with this litigation. However, the undersigned recommends that Plaintiff not recover pre-judgment interest or attorney's fees.

## II.  The Factual Allegations Contained in the Amended Complaint

Plaintiff's Amended Complaint pleads causes of action under: (1) breach of contract; (2) intentional misrepresentation; (3) negligent misrepresentation; and (4) intentional infliction of emotional distress.  The Court ordered an entry of default against Defendants Council and Veney on May 8, 2007.  Once default is established, a defendant has no further standing to contest the *factual allegations* of a plaintiff's claims.  *Jefferson v. Briner, Inc.*, 461 F. Supp. 2d 430, 431 (E.D. Va. 2006).  However, a default is not an "absolute confession by the defendant of his liability and of the plaintiff's right to recover."  *Ryan v. Homecomings Financial Network*, 253 F. 3d 778, 780 (4th Cir. 2001).  The Court must still decide whether or not the facts as alleged in the complaint constitute a legitimate cause of action, as a party in default does not admit

2

conclusions of law. *Ryan*, 253 F. 3d at 780; 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688, at 63.

Plaintiff alleges, and the Court is recommended to accept as true, that she was visited at her home in Silver Spring, Maryland in April of 2003 by Defendants Council and Veney. Defendants asked Plaintiff to invest money in the purchase, processing and re-sale of precious gems from Africa through the United Gold Network, LLC ("United Gold"). Council and Veney represented to Plaintiff that United Gold was a valid and operating business venture, and made representations that Defendant Forrest Sygman would be investing $30,000 in the venture. The Amended Complaint represents that Council and Veney were fully aware of Plaintiff's "business concerns" as well as the extent to which any investment she made would be in service of those interests.

On May 17, 2003, Plaintiff entered into a written contract with United Gold, with Defendant Veney signing on its behalf as its agent. The contract, entitled "Agreement," states that Seton would provide United Gold with $50,000.00 to secure a bank guarantee and line of credit, in unspecified amounts, to be used as collateral to capitalize a project for the purchase of gems. In return, upon the issuance of the bank guarantee and line of credit, United Gold promised to (1) issue membership subscriptions to Seton equal to a 20% share in United Gold and a 20% share of Emerging International Assets, Inc. ("EIA"); (2) pay Seton a dividend equal to 20% of her investment every sixty (60) days; (3) provide all necessary funding for the purchase of two properties on Georgia Avenue ("the Georgia Avenue Properties") by Seton, for which Seton had previously made down payments; and (4) transfer $750,000 to Seton on a date uncertain.

3

Plaintiff entered into a second contract with United Gold, entitled "Subscription Agreement" on May 16, 2003, which defined the terms and conditions of Seton's membership subscription in United Gold.

Plaintiff transferred $25,000 from business accounts in the names of Seton & Seton, Inc., Seton Manor Care, and Millenium Realty and Management, Inc. to a trust account held by Defendant Sygman.  On May 28, 2003, Seton transferred an additional $25,000 to Sygman's account out of a personal retirement account.  On June 5, 2003, Veney wrote a letter to the seller of the Georgia Avenue Properties on Madison Capital Holdings, Inc. letterhead, confirming the agreement to fund the properties for Seton, and indicating that the funds would become available on June 13, 2003.  When Plaintiff continued to question Defendant Veney concerning the status of her investment, he became "verbally abusive" towards her.  In late July of 2003, when Plaintiff again questioned Veney concerning the progress of the venture, Veney issued a "veiled threat," stating "if you continue to pursue me, I will take care of you.  I'm a Veney, and the people in Baltimore know the Veneys."

To date, Defendants have not performed their obligations under the contract.  Subsequent investigation revealed that United Gold was formed on May 16, 2003, the same day Plaintiff signed the Subscription Agreement, and over a month after Defendants approached Plaintiff with the investment proposal.  United Gold was dissolved on October 1, 2004.

Plaintiff claims that she lost a number of real estate holdings, automobiles, and significant personal property as a result of Defendants' conduct.  Additionally, Plaintiff claims that she experienced severe mental and emotional distress.

4

### III.  Breach of Contract

#### A.  *Defendant Veney Alone is Liable for Breach of Contract*

Plaintiff asserts a cause of action in breach of contract based on Defendants' failure to perform certain obligations under the Agreement.  These obligations include (1) issuing membership subscriptions to Plaintiff equal to a 20% equity share in United Gold and EIA; (2) paying Plaintiff a dividend equal to 20% of her investment every sixty (60) days; (3) providing all necessary funding for the Georgia Avenue properties; and (4) transferring $750,000.00 to Plaintiff.

Ordinarily, an agent does not incur personal liability in contract by signing an agreement on behalf of an existing corporation, as the corporation is considered to be an independent entity under the law.  *Fuller v. Horvath*, 42 Md. App. 671, 684, 402 A.2d 134, 142 (Md. App. 1979); *Damazo v. Wahby*, 259 Md. 627, 633, 270 A.2d 814, 817 (Md. App. 1970); *A.B. Corporation v. Futrovsky*, 259 Md. 65, 79, 267 A.2d 130, 137 (Md. App. 1970).  Nevertheless, Maryland courts have imposed liability on individual officers, directors and shareholders of a corporation who have participated in fraudulent schemes.  *Fuller*, 42 Md. App. at 684, 402 A.2d at 142.  This is so even though such fraudulent action was conducted in furtherance of corporate business.  *Id.* at 684, 402 A.2d at 142; *Ace Development Co. v. Harrison*, 196 Md. 357, 366-67, 76 A.2d 566, 570 (Md. App. 1950).  The Court may disregard the corporate entity and "deal with substance rather than form" in order to prevent fraud or enforce a paramount equity.  *Fuller*, 42 Md. App. at 684, 402 A.2d at 142.

Under Maryland law, fraud must be shown by clear and convincing evidence.  *Jones v. Rosenberg*, 178 Md. App. 54, 72, 940 A.2d 1109, 1119 (Md. App. 2008); *Colandrea v.*

*Colandrea*, 42 Md. App. 421, 426, 401 A.2d 480, 483 (Md. App. 1979).  Assuming the truth of

the facts as alleged, the undersigned recommends that Plaintiff has satisfied her burden of proof,

as the Amended Complaint represents that Veney lied to Plaintiff to induce her into investing in

the corporation, and accepted her money without any intention of having the corporation perform

under the contract.  As it appears that Defendant Veney used the corporate form to facilitate a

scheme to defraud Plaintiff, the undersigned recommends that he not be insulated from liability

for his role in this fraudulent transaction.

With regard to Defendant Council, although he allegedly made false representations to

persuade Plaintiff to invest in the venture, he was not a party to the contract, nor did he

demonstrate any role as an agent of the corporations involved.  Although Defendant Council may

still be liable under causes of action in tort for his role in the negotiations, it is recommended that

he not incur liability under a breach of contract theory.

## B. Plaintiff Should Recover $25,000 for Breach of Contract

In order to calculate Plaintiff's damages under a breach of contract theory, the Court

should first decide whether Plaintiff can recover for the losses incurred by corporations in which

she is the sole shareholder.  Next, the Court should determine the proper measure of damages

given the terms of the contract and the injuries that Plaintiff sustained.  Finally, the Court should

determine if Plaintiff can recover for consequential damages stemming from the breach.

## (1)  Plaintiff Should Not Recover Corporate Losses

Ordinarily, a stockholder cannot sue individually to recover damages for injuries to a

corporation.  *Waller v. Waller*, 187 Md. 185, 190, 49 A.2d 449, 452 (Md. App. 1946).  An action

to recover damages for an injury to a corporation can be brought only in the name of the

corporation itself acting through its directors and not by an individual stockholder, though the injury may incidentally result in diminishing or destroying the value of the stock. *Id.*, 49 A.2d at 452.

Although Plaintiff testified that she was the sole shareholder of Seton & Seton, Inc., Seton Manor Care, and Millenium Realty and Management, Inc., under Maryland law, this fact will not prevent the application of this rule. *See Maryland Community Health Systems, LLP*, 115 F. Supp. 2d 509, 605 (D. Md. 2000) (stating that "it is considered a 'fundamental rule' that 'even a sole shareholder does not have standing to assert claims alleging wrongs to the corporation.'"). As such, the undersigned recommends that Plaintiff be barred from recovery for any corporate losses that she has claimed.

(2)  Plaintiff Should Recover Her Personal Reliance or Restitution Damages

Generally, the measure of damages available to a plaintiff in a breach of contract action consists of: (1) expectation damages, which seek to provide the plaintiff with the "benefit of her bargain" by putting her in the position she would have been in had the contract been performed; (2) reliance damages, which seek to reimburse the plaintiff for losses stemming from her reliance on the contract by placing her in the position she would have been in had the contract not been made; and (3) restitution damages, which seek to restore any benefit that the plaintiff has conferred on the other party.  24 WILLISTON ON CONTRACTS § 64:2 (4th ed. 2007*)*.

Expectation damages are not only the most accurate means of measuring loss following a breach of contract, but also the most common measure of recovery granted. *Dialist Co. v. Pulford*, 42 Md. App. 173, 179, 399 A.2d 1374, 1379 (Md. App. 1979); *Pennsylvania Threshermen & Farmers Mutual Cas. Ins. Co. v. Messenger*, 181 Md. 295, 300, 29 A.2d 643

(Md. App. 1943).  Losses that are speculative, hypothetical, remote, or contingent either in eventuality or amount, will not qualify as reasonably certain, and therefore are not recoverable as contract damages.  *Hoang v. Hewitt Ave. Associates, LLC*, 177 Md. App. 562, 936 A.2d 915 (Md. App. 2007). Where the proof of lost profits is not reasonably certain, the promisee may seek, as an alternative, damages based instead on her reliance interest.  *Dialist Co.*, 42 Md. App. at 179-80, 399 A.2d at 1379.

In this case, the speculative and/or contingent nature of Plaintiff's expectation damages should prevent recovery.  First, the value of the membership subscriptions for United Gold and EIA is too speculative to calculate to any degree of certainty, as the Court is unable to accurately quantify the value of each share.  According to the Amended Complaint, United Gold was not incorporated until the day before the Agreement was signed, and EIA was a new venture as well.  As such, the values of these companies are unknown, and any award of damages stemming from this provision would be speculative in nature.

Furthermore, all of Defendants' obligations under the Agreement were contingent upon the issuance of a bank guarantee and the establishment of a line of credit.  As Defendants' obligations were contingent upon funding sources by way of separate business transactions, it is doubtful that Plaintiff has demonstrated the level of certainty usually required to obtain a benefit of the bargain recovery.  Accordingly the Court is urged not to endorse a recovery under this theory.

Plaintiff could seek to recover reliance or restitution damages in lieu of expectation damages, which would consist of the $50,000 capital contribution to United Gold.  However, Plaintiff testified that she paid $25,000 of the investment total from bank accounts held in the

names of Seton & Seton, Inc., Seton Manor Care, and Millenium Realty and Management, Inc. Given the limitations on an individual's recovery for corporate losses discussed above, Plaintiff is not entitled to recover this full amount in her personal capacity.

In summary, the undersigned recommends that Plaintiff receive reliance or restitution damages in the amount of $25,000, which represents the amount of her capital contribution that was paid from her personal retirement account.

(3) Consequential Damages are not Available

Plaintiff has claimed breach of contract damages in the amount of $50,000,000.00.  This amount includes her capital contribution to United Gold as well as a number of losses that she claims were a direct result of Defendants' failure to honor the terms of the contract, including a number of real estate holdings, automobiles, and other personal property.

In a breach of contract action, a plaintiff may only receive compensation for those injuries that the defendant had reason to foresee as a probable result of his breach at the time that the contract was made.  *Hoang v. Hewitt Ave. Assoc., LLC*, 177 Md. App. 562, 594-95, 936 A.2d 915, 934-35 (Md. App. 2007); *Stone v. Chicago Title Ins. Co. of Maryland*, 330 Md. 329, 339-40, 624 A.2d 496, 501-02 (Md. App. 1993).  If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and foresee the injury. *Certain-Teed Products Corp. v. Goslee Roofing & Sheet Metal, Inc.*, 26 Md. App. 452, 472, 339 A.2d 302, 314 (Md. App. 1975).

Given the limits on recovery of consequential damages for breach of contract, the undersigned recommends that Plaintiff be barred from recovering these less than direct losses, as

she has not demonstrated that they were contemplated at the time the Agreement was executed.

During the hearing on April 3, 2008, Plaintiff testified that the $50,000.00 investment

represented four (4) months of operating costs for her numerous businesses.  She also testified

that Council and Veney had knowledge of her "business interests" through discussions and tours

of her group home facilities and investment properties, and that they were fully aware of the

extent to which her investment in United Gold would be in service of those interests.

However, Plaintiff was unable to provide concrete and persuasive testimony to

demonstrate that, at the time the contract was executed, Defendants could foresee the dramatic

losses that she would incur due to a breach.  Although they may have known that she owned

several homes and businesses, Plaintiff was unable to identify specific conversations with

Council or Veney that would have put them on notice that she would lose these assets greatly in

excess of one million dollars if she did not receive the promised return on her investment.  It is

doubtful that the mere knowledge of Plaintiff's "business interests" and real estate holdings

suffices to create liability for her subsequent losses.

## IV.  Fraud and Negligent Misrepresentation

### A.  Defendant Veney Alone is Liable for Fraud

Plaintiff asserts a cause of action under a theory of fraud.  To prevail in an action for

fraud under Maryland law, a plaintiff must demonstrate: (1) that a defendant made a false

representation; (2) that its falsity was either known to the speaker, or the misrepresentation was

made with such a reckless indifference to truth as to be equivalent to actual knowledge; (3) that

it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that

such person justifiably relied on the misrepresentation; (5) that she would have not done the

thing from which the injury resulted absent the misrepresentation; and (6) that she actually suffered damage directly resulting from such fraudulent misrepresentation. *Goldstein v. Miles*, 159 Md. App. 403, 434-35, 859 A.2d 313, 331 (Md. App. 2004)*; Hogan v. Maryland State Dental Ass'n*, 155 Md. App. 556, 565, 843 A.2d 902, 907 (Md. App. 2004).

According to Plaintiff, Council and Veney made false representations that (1) United Gold was a "going corporate concern" with assets and capital; and (2) that Defendant Forrest Sygman would also invest $30,000 in the venture.  Plaintiff claims that she was "presented with documents testifying to [United Gold's] existence and its established business history." Subsequent investigations revealed that United Gold was formed on May 16, 2003, the same day that the Subscription Agreement was executed, and approximately one month after Council and Veney approached Plaintiff with their proposal.  Veney later informed Plaintiff that Defendant Sygman would not be investing in the venture after all.

As a preliminary matter, since the false representations were made almost a month before United Gold was incorporated, the Court does not have to undertake a veil-piercing analysis to hold Defendants personally liable under this cause of action.

Assuming the truth of the facts alleged in the Complaint, the undersigned recommends that Plaintiff has met her burden with regard to Defendant Veney.  First, Plaintiff justifiably relied on Defendant Veney's false representations, as the corporate and financial status of the organization as well as the promised capital contributions of other investors were material factors in Plaintiff's decision to invest in United Gold.  Further, Defendant Veney was in the position to know that United Gold was not an existing corporate entity at the time the proposal was made because he was an agent negotiating on behalf of the company.  Finally, Plaintiff

11

suffered at least $25,000 in damages, which represents the amount of her capital contribution that was paid from her personal retirement account.  Accordingly, it is suggested that the facts alleged are sufficient to establish Defendant Veney's liability for fraud.

With regard to Defendant Council, it is doubtful that the facts as alleged in the Amended Complaint establish his liability for fraud.  The Amended Complaint states that Council accompanied Veney to Plaintiff's home on numerous occasions to convince her to invest in United Gold, and made false representations regarding the status of the corporation.  However, the record before the Court is somewhat unclear as to whether Council was in a position to know that these representations were erroneous.  Unlike Defendant Veney, there is no evidence on the record that Council was an agent of the corporation, and it is unclear what official role, if any, he had in United Gold.  Additionally, during the April 3, 2008 hearing, Plaintiff did not identify particular statements made by Council that demonstrated his knowledge of the fraudulent scheme.  In short, although Council had an integral role in the investment proposal and ensuing contract negotiations, Plaintiff has not presented any evidence on the record to support the conclusion that he had knowledge of the fraudulent nature of the transaction.  Given the clear and convincing standard of proof for fraud cases, it is unlikely that Plaintiff has met her burden with regard to Defendant Council.

*B.  Both Council and Veney are Liable for Negligent Misrepresentation.*

To prevail on an action for negligent misrepresentation, Maryland law requires that a plaintiff establish that: (1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; (2) the defendant intended that his statement would be acted upon by the plaintiff; (3) the defendant had knowledge that plaintiff would probably rely on the

statement, which, if erroneous, would cause injury; (4) the plaintiff, justifiably, took action in

reliance on the statement; and (5) the plaintiff suffered damage proximately caused by the

defendant's negligence.  *Goldstein v. Miles*, 159 Md. App. 403, 434-35, 859 A.2d 313, 332 (Md.

App. 2004).

Assuming the truth of the facts alleged in the Complaint, the undersigned recommends

that Plaintiff has successfully established Veney and Council's liability.  Both Defendants owed

Plaintiff a duty of care with regard to their contract negotiations.  The duty to furnish correct

information arises for purposes of a negligent misrepresentation claim when the relationship is of

the nature that one party has the right to rely upon the other for information.  *Cooper v.*

*Berkshire Life Ins. Co.*, 148 Md. App. 41, 58, 810 A.2d 1045, 1054 (Md. App. 2002).  The most

common example of the duty to speak with reasonable care is based on a business or

professional relationship, or one in which there is a pecuniary interest.  *Id.* at 58, 810 A.2d at

1054.  The question of whether a duty to give correct information exists involves many

considerations; there must be knowledge, or its equivalent, that the information is desired for a

serious purpose, the recipient intends to rely and act upon it, and he will be injured in person or

property if the information is false or erroneous.  *Id.* at 71, 810 A.2d at 1062.  A significant

factor in establishing a duty to support a negligent misrepresentation claim is whether the

promises were an inducement to the plaintiff, and provided the defendant with a business

advantage when the plaintiff acted in conformity therewith.  *Id.*, 810 A.2d at 1062.

In this case, Council and Veney provided inaccurate information, which induced

Plaintiff to invest money into the business venture.  Veney gained an advantage because the false

statements regarding United Gold's corporate status and Forrest Sygman's pending investment

made the venture appear more profitable, and he made these false statements with the specific intent that Plaintiff would rely on them.  Although it is doubtful that Plaintiff has met her burden of showing that Council had *actual knowledge* of the fraudulent nature of the scheme, his integral role in the proposal and contract negotiations created a duty to furnish accurate and correct information.  Furthermore, Council was in a position to know that the representations he made to Plaintiff regarding the corporate and financial status of United Gold, if false, would cause Plaintiff injury.  The undersigned has previously addressed factors (4) and (5) of this cause of action in Section IV(A) *supra,* and suggests that Plaintiff has satisfied her burden with regard to these elements.

### C.  Damages for Fraud and Negligent Misrepresentation

#### (1) Plaintiff Should Recover "Out of Pocket" Expenses

In determining the proper measure of damages in fraud and negligent misrepresentation cases, Maryland courts apply the "flexibility theory."  *Goldstein v. Miles*, 159 Md. App. 403, 422, 859 A.2d 313, 324 (Md. App. 2004).  Under this theory, a plaintiff may elect to recover either "out of pocket" expenses or benefit-of-the-bargain damages.  *Id.*, 859 A.2d at 324.  "The former will permit the plaintiff to recover his or her actual losses; the latter 'put[s] the defrauded party in the same financial position as if the fraudulent representations had in fact been true.'"  *Id.*, 859 A.2d at 324.  Benefit-of-the-bargain damages, however, are only obtainable under the flexibility theory if there is an enforceable bargain.  *Id.* at 426, 859 A.2d at 326.

As Plaintiff had in fact entered into an enforceable contract, she could elect to recover benefit-of-the-bargain damages or "out of pocket" expenses.  However, as discussed in Section

III(B)(1) *supra*, the undersigned believes that benefit-of-the-bargain damages are either too speculative, or contingent upon the actions of an independent third party for her to recover.

If Plaintiff elects to recover her "out of pocket" expenses, she could potentially recover her capital contribution as well as any subsequent losses that were proximately caused by her loss of the investment. However, as $25,000 of her investment was paid from a corporate account, she cannot recover this amount, leaving her with a total recovery of $25,000 from her initial investment.

(2) Plaintiff is not Entitled to Recover Subsequent Losses

Plaintiff also requests damages for a number of subsequent losses, including: (1) $45,000.00 in down payments for the Georgia Avenue Properties; (2) $3,731,800.00 in real estate and home furnishings; (3) $177,500.00 in automobiles; (4) $1,691,834.00 in "personal losses"; (5) $10,006,700.00 in lost profits stemming from a business plan to construct and operate hotels in Liberia.

In order to recover these damages under causes of action in tort, Plaintiff must demonstrate that Defendants' misrepresentations were the proximate cause of these injuries. *MLT Enterprises, Inc. v. Miller*, 115 Md. App. 661, 675, 694 A.2d 497, 504 (Md. App. 1997). The proximate cause analysis consists of two elements: (1) cause in fact and (2) legally cognizable cause. *Wankel v. A&B Contractors, Inc.*, 127 Md. App. 128, 158, 732 A.2d 333, 349 (Md. App. 1999). Causation in fact raises the threshold question of "whether the defendant's conduct *actually* produced an injury." *Id.*, 732 A.2d at 349; *Peterson v. Underwood*, 258 Md. 9, 16-17, 264 A.2d 851 (Md. App. 1970). To show that Defendants' conduct is a legally cognizable cause of Plaintiffs' injuries, she must demonstrate that such injuries are a foreseeable

15

consequence of that conduct.  *Wankel*, 127 Md. App. at 159, 732 A.2d at 349.  Consequences that are possible, but that are not normal, natural or probable, are not considered to be foreseeable.  In other words, a defendant's conduct will not be considered a legal cause of an injury where it appears highly extraordinary that it should have brought about the harm. Restatement (Second) of Torts § 435 (1965).

Even assuming that Defendants' misrepresentations triggered a chain reaction of events leading to her financial ruin, Plaintiff has not demonstrated that such injuries were the foreseeable consequence of Defendants' conduct.  Plaintiff seeks millions of dollars in damages for a wide variety of losses, including real estate holdings, automobiles, and lost profits stemming from her plans to build and operate a hotel in Liberia.  The mere fact that Defendants were aware of Plaintiff's proprietary interests in real estate and personal property did not alone make such injury foreseeable, especially given the fact that Plaintiff's capital contribution to United Gold was quite minimal in comparison to the total amount of damages claimed.  This is especially true with regard to the hotels in Liberia, as Defendants would not have had reason to foresee that their conduct would lead to losses stemming from hotels that had not even been constructed.

With regard to the $45,000.00 down payments for the Georgia Avenue Properties, there is no indication that Plaintiff made these payments in reliance on Defendant's misrepresentations, as the record reflects that she had agreed to purchase these properties and made the down payments before Defendants approached her with the investment proposal. Further, Plaintiff has not provided the Court with specific information regarding the future

16

financial arrangements involved with the purchase of this property to demonstrate how Defendants' actions put her investment at risk.

In short, the undersigned finds that the subsequent economic injuries claimed by Plaintiff were not a foreseeable consequence of Defendants' conduct.

### (3) Plaintiff Should Not Recover for Emotional Distress

With regard to any non-economic damages stemming from the fraud, most jurisdictions have held that fraud damages are limited to pecuniary loss, with no recovery for emotional distress. *Lapides v. Trabbic*, 134 Md. App. 51, 70 n.9, 758 A.2d 1114, 1124 n.9 (Md. App. 2000) (*quoting* Steven J. Gaynor, *Fraud Actions: Right to Recover for Mental or Emotional Distress*, 11 A.L.R. 5th 88). In Maryland, courts have held that a plaintiff in a fraud action cannot recover damages for an emotional injury in the absence of an accompanying or consequential physical manifestation of the injury. *Hoffman v. Stamper*, 385 Md. 1, 38, 867 A.2d 276, 298 (Md. App. 2005). As Plaintiff has not alleged that she suffered any concrete physical injury, she cannot recover for emotional distress under this cause of action.

### (4) Plaintiff May Receive an Award of Punitive Damages for Fraud

Plaintiff also requests punitive damages for her tort claims. Punitive damages are defined as those other than compensatory or nominal damages awarded against a person to punish outrageous conduct. 8 M.L.E. Damages § 52. Generally, exemplary or punitive damages may be awarded where there is an element of fraud, malice, evil intent, or oppression entering into and forming part of the wrongful act. 8 M.L.E. Damages § 55. A plaintiff must establish by clear and convincing evidence the basis for an award of punitive damages. *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 466, 601 A.2d 633, 655-56 (Md. App. 1992). "Punitive damages are

17

not recoverable based upon any theory of 'implied malice,' either in the sense of gross negligence or in the sense of inferring malice from an element of the tort." *Bowden v. Caldor, Inc.*, 350 Md. 4, 23, 710 A.2d 267, 276 (Md. App. 1998). Even where the evidence warrants punitive damages, it is within the sound discretion of the trier of fact to award or deny such damages. 8 M.L.E. Damages § 55.

In this case, punitive damages are likely not available for Plaintiff's negligent misrepresentation cause of action, as this particular count does not allege the sort of malice or bad faith required for such recovery. However, the undersigned does find that Plaintiff's fraud claim justifies an award of punitives against Defendant Veney, as Plaintiff alleges that Veney intentionally misrepresented material facts in order to induce her to invest in United Gold. Further, the allegations that Veney intended to keep Plaintiff's capital contribution with no intention of honoring his obligation under the contract personally, or by way of corporate activity, support a finding of bad faith and malicious intent.

In assessing the appropriate amount of punitive damages, the Court may want to consider the following principles of Maryland law: (1) The most important legal rule in this area is that the amount of punitive damages must be proportionate to the gravity of the defendant's wrong; (2) a punitive damages award should be proportionate to the defendant's ability to pay; (3) since one of the purposes of punitive damages is to deter the defendant from engaging in similar conduct, the "deterrence value" of the award is relevant as well; (4) punitive damage award amounts can be compared to civil or criminal penalties for comparable misconduct; (5) such awards can also be compared to other final punitive damages awards within the jurisdiction, particularly with awards in somewhat comparable cases; (6) when the total amount of punitive

damages awarded against the defendant is based on separate torts, a pertinent consideration is whether the separate torts all grew out of a single occurrence or episode; (7) a court may consider plaintiff's reasonable costs and expenses resulting from defendant's conduct, including the expenses of litigation, which are not covered by an award of compensatory damages; and (8) a generally accepted factor is whether the punitive damages award bears a reasonable relationship to the compensatory damages awarded in the case. *Bowden*, 350 Md. at 27-39, 710 A.2d at 278-84.

In determining the proper amount of punitive damages to award in this particular situation, the undersigned finds factors (1), (2), (7), and (8) to be most relevant. With regard to factor (1), the undersigned finds Defendant Veney's conduct malicious and objectionable. The record reflects that Defendant Veney, aware that Plaintiff was managing a number of businesses and real estate properties inherited from her late husband, lied to Plaintiff with the specific intent of inducing her to invest in a "sham" corporation. Subsequently, Veney made little to no efforts to further the venture or honor his obligations under the Agreement, and became hostile and threatening when Plaintiff questioned him regarding the progress of the venture. Eventually, he disappeared along with Plaintiff's capital contribution, and has neither contacted Plaintiff nor entered an appearance in this case.

With regard to factor (2), although Plaintiff did not introduce evidence at the hearing regarding Defendant Veney's financial condition, Maryland courts have held that a plaintiff has no obligation to establish a defendant's ability to pay punitive damages. *Khalifa v. Shannon*, 2008 WL 943013, at *20 (Md. App. Apr. 9, 2008). As such, the undersigned recommends that Plaintiff's failure to introduce such evidence should not affect the amount of damages awarded.

With regard to Plaintiff's reasonable expenses resulting from Defendant's conduct, the record reflects that Plaintiff has suffered significant harm as a result of this ordeal.  Plaintiff claims that the loss of her capital contribution led to her total financial ruin, and although it is unlikely that Plaintiff can recover much of the losses claimed as compensable damages, the undersigned recommends that such harm is relevant to a calculation of punitives.

Finally, with regard to factor (8), although there is no bright-line mathematical formula to be applied, a punitive damages award should bear a reasonable relationship to an award of compensatory damages.  *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 579 (1996).  In light of the relatively small compensatory damages award recommended in this report, the undersigned believes that a punitive damages award of $25,000 is appropriate.

### V.  Intentional Infliction of Emotional Distress

To recover for the tort of intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme or outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe.  *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 58, 502 A.2d 1057, 1063 (Md. App. 1986).

Accepting the facts of the Amended Complaint as alleged, the undersigned finds that Defendants' conduct was neither intentional nor reckless, as used for this tort.  To satisfy this requirement, a plaintiff must demonstrate that the defendant either "desired to inflict severe emotional distress, knew that such distress was certain or substantially certain to result, or acted recklessly in deliberate disregard of a high degree of probability that emotional distress would

follow." *Foor v. Juvenile Services Adminsitration*, 78 Md. App. 151, 175, 552 A.2d 947, 959 (Md. App. 1989).

In this case, although Plaintiff testified under oath during the April 3, 2008 hearing that Defendants had knowledge that her $50,000.00 investment represented four (4) months of operating funds for her numerous businesses, she was unable to substantiate this contention with specific facts. Plaintiff testified that Defendants had taken tours of her group home and accompanied her to business meetings, but she could not point to specific conversations with Council and Veney that would have put them on notice that the loss of her investment would lead to her financial ruin and subsequent emotional injury. Accordingly, even assuming that Defendants intended to keep her $25,000.00 investment without honoring their obligations under the contract, Plaintiff has not demonstrated that Defendants had the specific intent, or even the knowledge, that their actions would lead to an extreme *emotional*, rather than purely financial, injury.

Along the same lines, the undersigned finds that Plaintiff has not met her burden with regard to the second factor under this cause of action. The standard of actionable conduct under this tort is exacting and stringent. *See, eg*., *Hamilton*, 66 Md. App. at 59, 502 A.2d at 1064 (holding that a collection agency employees' persistent threatening and harassing phone calls, although unquestionably rude and insensitive, did not constitute extreme and outrageous conduct for purposes of this cause of action); *Beye v. Bureau of National Affairs*, 59 Md. App. 642, 477 A.2d 1197 (Md. App. 1984) (holding that a discharged employee was not entitled to recover from his supervisors who gave him poor performance ratings, passed over him to promote less qualified individuals, appointed as his supervisor a man who the plaintiff had attempted to have

21

prosecuted, and deceived him into resigning); *Continental Casualty Co. v. Mirabile*, 52 Md. App. 387, 449 A.2d 1176 (Md. App. 1977) (holding that employee's supervisor's conduct was not extreme and outrageous so as to justify award of damages for intentional infliction of emotional distress where supervisor moved employee from desk to desk, yelled and screamed at him to move away from particular desk and may have tapped employee on the nose and pushed him).

Although Defendants' conduct is certainly reprehensible, the undersigned is not convinced that it satisfies the stringent standard for this element under Maryland law. To satisfy the necessary element that conduct be extreme and outrageous, the conduct in question must "completely violate human dignity," and "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Hamilton*, 66 Md. App. at 59-60, 502 A.2d at 1064.  In this case, Defendants' conduct in misrepresenting the corporate and financial status of United Gold, while objectionable, does not rise to the level of violating human dignity, as their behavior was intended solely to inflict financial harm on Plaintiff rather than emotional or physical injury.  Accordingly, the undersigned recommends that Plaintiff not be permitted to recover under this cause of action.

## VI.  Pre-Judgment Interest

Plaintiff requests pre-judgment interest for her recovery under each cause of action.  The purpose of pre-judgment interest is to compensate the aggrieved party for the loss of use of the principal liquidated sum and the loss of income from such funds.  *Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 770, 923 A.2d 971, 1022 (Md. App. 2007); *I.W. Berman Props v. Porter Bros., Inc.*, 276 Md. 1, 24, 344 A.2d 65 (Md. App. 1975).

22

Pre-judgment interest is allowable *as a matter of right* when the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgments, so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date. *Pulte,* 174 Md. App. at 771, 923 A.2d at 1022; *Gordon v. Posner*, 142 Md. App. 399, 438, 790 A.2d 675 (Md. App. 2002).  By way of example, such a right would arise under written contracts to pay money on a date certain, or in conversion cases where the value of the chattel converted is readily ascertainable. *Buxton v. Buxton*, 363 Md. 634, 656, 770 A.2d 152, 165 (Md. App. 2001).  On the other hand, in tort cases where the recovery is for bodily harm, emotional distress, or similar intangible elements of damage that are not easily susceptible to precise measurement, the award itself is presumed to be comprehensive, and prejudgment interest is not allowed. *Id.*, 770 A.2d at 165.

In between these two extremes, there are a broad category of contract cases in which the allowance of pre-judgment interest is *within the discretion of the trier of fact*. *Pulte,* 174 Md. App. at 771, 923 A.2d at 1022; *Buxton*, 363 Md. at 657, 770 A.2d at 165.  This exercise of discretion must be based on the equity and justice appearing between the parties and a consideration of all the circumstances. *Pulte*, 174 Md. App. at 771, 923 A.2d at 1022.

Although not available as a matter of right, it is within the Court's discretion to award pre-judgment interest on Plaintiff's unliquidated damages claims in contract. *Id.*, 923 A.2d at 1022.  In this case, the fraud associated with the execution of the Agreement weighs in favor of an award of interest.  However, the language of the Agreement did not specify the amount of damages stemming from a breach, and Plaintiff's benefit-of-the-bargain damages were speculative and contingent upon the actions of an independent third-party.  As such, the damages

stemming from Plaintiff's loss of her capital contribution were not capable of objective determination prior to the issuance of a judgment.

Additionally, since the contract did not provide a time frame for United Gold's performance, the Court may have difficulty identifying a date certain from which to calculate interest. Arguably, interest could be calculated from October 4, 2004, the date that United Gold was dissolved, as it was clear by this point that a breach had occurred and Plaintiff's cause of action had accrued. Nevertheless, given the uncertainty both in ascertaining the date that Plaintiff became entitled to a recovery as well as the amount of the recovery, the undersigned recommends that the Court refrain from awarding interest.

If the Court decides that an award of pre-judgment interest is appropriate, the rate of interest to be applied is governed by MD Constitution Art. 3, § 57, which places the legal rate of interest at six (6) percent per annum.

**VII.  Costs and Attorney's Fees**

Plaintiff requests an award of costs and attorney's fees under each cause of action plead in the Amended Complaint. In Maryland, unless otherwise provided by rule, law or order of the court, the prevailing party is entitled to recover court costs. Maryland Rule 2-603. These costs are limited, and do not include attorney's fees. *Bahena v. Foster*, 164 Md. App. 275, 291, 883 A.2d 218 (2005). Although Plaintiff is entitled to recover these costs, to date, she has not provided the Court with information regarding the amount of costs incurred in connection with this litigation.

Attorney's fees, however, are not an available remedy under these circumstances. The general rule is that expenses of litigation, including attorney's fees, are not recoverable by the

prevailing party in an action for damages.  *Schisler v. State*, 177 Md. App. 731, 938 A.2d 57,

(Md. App. 2007); *Empire Realty Co., Inc. v. Fleisher*, 269 Md. 278, 285, 305 A.2d 144, 148

(Md. 1973).  In the absence of "special circumstances," such as where the parties to a contract

agree on the payment of attorney's fees, or a statutory requirement, such fees are not a proper

element of damages.  *Empire Realty*, 269 Md. At 285, 305 A.2d at 148.  As there is no provision

in the Agreement regarding the payment of attorney's fees in the event of a dispute, and there is

no statutory authority authorizing an such award, it is recommended that Plaintiff is not entitled

to recover such fees.

### VIII.  Plaintiff's Compliance with the Servicemembers Civil Relief Act of 1940

 The Servicemembers Civil Relief Act of 1940 contains provisions that protect members

of the military from default judgment.  Specifically, 50 App. U.S.C.A. § 521 requires a plaintiff

to file a written affidavit stating whether the defendant is in military service and showing

necessary facts to support this statement before entry of judgment by the Court.

If a plaintiff is unable to ascertain whether a defendant is in military service, she should

specify this in the affidavit.  *Id.*  If the Court is thereafter unable to determine whether a

defendant is in military service, before entering judgment, it may require the plaintiff to file a

bond to indemnify a defendant against any loss or damage should the judgment be set aside.  *Id.*

Finally, if it appears that a defendant is in military service, the court may not enter a judgment

until it appoints an attorney to represent the defendant.  *Id.*

In this case, Plaintiff testified at the April 3, 2008 hearing that she was unable to

determine whether Defendants Council and Veney were currently in military service.  Plaintiff

testified that she contacted military authorities at the Department of Defense, Andrews Air Force

Base, and Fort Meade, but could not determine the current status of either Defendant.  To date, Plaintiff has not filed an affidavit with the Court, as required by the Servicemembers Civil Relief Act.  At the April 3, 2008 hearing, the undersigned advised Plaintiff to submit such affidavit, as the Court cannot make an entry of judgment until she has done so.  Plaintiff represented that she would be filing such in the near future.

### IX.  Conclusion and Recommendation

Assuming the truth of the facts alleged in the Amended Complaint and the testimony offered by Plaintiff at the hearing, the undersigned recommends that Defendant Veney is liable to Plaintiff for breach of contract and fraud, and that both Defendant Veney and Council are liable for negligent misrepresentation.  As such, the undersigned recommends that Defendants be held jointly and severally liable to Plaintiff in the amount of $25,000 as well as court costs associated with the litigation.  The undersigned also recommends that Defendant Veney, alone, be held liable for punitive damages stemming from Plaintiff's fraud counts in the amount of $25,000.

            /s/
Charles B. Day
United States Magistrate Judge

CBD/nrh

Copies to:

The Honorable Deborah K. Chasanow

Vivian Seton, *pro se*
13912 Castle Blvd Apt. 104
Silver Spring, MD 20904